IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 13, 2011

**IN RE DYLAN H., ET AL.**

**Appeal from the Juvenile Court for Johnson City**
**Nos. 37,323; 37,324    Sharon M. Green, Judge**

---

**No. E2010-01953-COA-R3-PT-FILED-DECEMBER 16, 2011**

---

This is a parental rights termination case in which Karen C. and Raymond C. (collectively the "Grandparents") filed a petition to terminate the parental rights of Valerie H. ("Mother") and Ronnie H. ("Father") to minor children, Dylan H. and Jade H. (collectively the "Children"). Temporary custody of the Children was awarded to the Grandparents in July 2007. The Grandparents, alleging abandonment, persistence of conditions, and failure to adhere to a permanency plan, filed a petition to terminate parental rights in February 2010. Following a bench trial, the court dismissed the petition as to Father but found that clear and convincing evidence existed to support the termination of Mother's parental rights on the ground of abandonment and that it was in the best interest of the Children to terminate Mother's parental rights. Mother appeals. We do not believe the Grandparents proved by clear and convincing evidence that Mother abandoned the Children. Accordingly, we reverse the decision of the trial court. The case is remanded to the trial court for further proceedings as may be necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Janie Lindamood, Johnson City, Tennessee, for the appellant, Valerie H.

Lisa Rice, Elizabethton, Tennessee, for the appellees, Karen C. and Raymond C.

Lisa Anne Witherspoon, Johnson City, Tennessee, guardian ad litem for the minors, Dylan H. and Jade H.

**OPINION**

## I. BACKGROUND

Dylan H. and Jade H. were born to Mother and Father (collectively the "Parents") on February 23, 2004 and October 30, 2005, respectively. In June 2007, the Department of Children's Services ("DCS") filed a petition seeking classification of the Children as dependent and neglected. As grounds for this classification, DCS alleged that the Parents were "by reason of mental incapacity, immorality, or depravity unfit to properly care for" the Children. DCS further alleged that

1. The [Parents] ha[d] been using cocaine and marijuana in the presence of the[] [C]hildren;

2. [Mother] admitted to driving with the [C]hildren in the car[] while under the influence of illegal substances;

3. [Mother] admitted to carrying drugs and drug paraphernalia in the car[] with her and [the Children];

4. [Mother] transported [the Children] in her automobile without proper car seats and/or using seat belts;

5. That the home was visited on [June 23, 2007] by [DCS]. That during the visit [DCS] noted that the home was cluttered and full of trash. That every walk way was blocked and numerous safety hazards were noted. Pill bottles, dirty diapers and food were piled in the floor;

6. [Father] is currently incarcerated for violation of probation.

Following a hearing on the petition, the trial court granted temporary custody of the Children to Karen C., the maternal grandmother ("Grandmother") and directed the Parents to "obtain and maintain stable housing [and] participate in drug and alcohol treatment and random drug screens." Several status hearings were held in which the court reviewed the progress of the Parents and eventually relieved DCS from the case. On February 22, 2008, the court reaffirmed its classification of the Children as dependent and neglected and without objection from the Parents, granted permanent guardianship status to Grandmother and Raymond C., the maternal step-grandfather ("Grandfather"). In the order granting permanent guardianship status, the court advised the Parents that they were to pay child support and that "willful failure to pay [could] result in the eventual termination of their parental rights." Each parent

was directed to pay $783 a month in child support. This amount was automatically taken out of Father's check by his employer, while Mother was tasked with submitting her payment each month because she was unable to maintain full-time employment.[1] A second order was filed five months later in which the court again awarded the Grandparents permanent guardianship status of the Children and subsequently advised the parties that if the Grandparents determined that the Parents were "making progress and improvements in their lives[, the Grandparents] may increase periods of visitation."

In December 2008, the Grandparents returned the Children to the Parents. The court was not informed of the informal change of custody. In 2009, Mother and Father experienced marital difficulties, and in June, Mother and the Children moved in with the Grandparents. Father visited the Children but did not move in with the Grandparents. Instead, he moved in with Susan Patrick, the maternal great-grandmother who lived in a house adjacent to the Grandparents. In October 2009, the relationship between the Parents and the Grandparents eventually deteriorated to a point where the Grandparents told Mother to vacate the residence. Mother complied and established a residence with Father, while the Children stayed with the Grandparents. The Grandparents prohibited the Parents from visiting with the Children.

Approximately four months later, the Grandparents filed a petition to terminate the parental rights of the Parents. The Grandparents explained that in 2009, the Parents showed "some improvement in their lifestyle and attitude toward [the Children]" but that the improvement was short lived. The Grandparents alleged that the Parents had failed to exercise visitation as ordered, that Mother failed to maintain employment and had paid "virtually no child support," and that while Father had paid some child support, he continued on a path of instability and irresponsibility as to his overall lifestyle. They asserted that the Parents had failed to complete the parenting, educational, and rehabilitation classes ordered by the trial court. They claimed that the Parents failed to maintain a stable home and that the living conditions were "deplorable and unsanitary" in every home they attempted to establish. They opined that when visiting with the Parents, the Children regressed in terms of behavior and academic performance. As legal grounds in support of their petition, the Grandparents contended that the conditions which led to the removal of the Children persisted and that the Parents had abandoned the Children, had made no reasonable efforts to maintain a suitable home, and had failed to comply with the "responsibilities and provisions of the [c]ourt relating to remedying the conditions which necessitated" the removal of the children. *See* Tenn. Code Ann. § 36-1-113(g)(1)-(3).

---

[1]In July 2009, Father petitioned the court for a reduction in child support. His request was granted.

Likewise, the Parents filed a petition to re-establish court-ordered visitation. They alleged that the Grandparents had ceased visitation without court approval. Following the filing of the petition to terminate parental rights, a hearing was held on the petition to re-establish visitation. The trial court ordered the Grandparents to comply with supervised visitation with the Parents. This visitation was to occur once a week.

The four-day trial on the termination petition was held over four months in 2010. Following the presentation of the Grandparent's evidence, the court found that the Grandparents had failed to prove that the Parents had abandoned the Children by failing to visit them and that Father had abandoned the Children by failing to pay child support. The court further found that the ground of failure to adhere to the permanency plan was not a proper ground for termination. The court noted that the Parents were never given a permanency plan because the Children had not been taken into state custody. The trial proceeded on the grounds of persistence of conditions and Mother's failure to support to the Children. The court rejected the persistence of conditions ground but eventually found that Mother had abandoned the Children by willfully failing to support them. At issue in this case is whether clear and convincing evidence existed to support termination of Mother's parental rights for willfully failing to support the Children. Thus, we will only recount the testimony presented on that ground of termination.

Mother was pregnant with her third child by Father at the time of the trial. Relative to Mother's financial support of the Children during the period in question, Mother admitted that she was ordered to pay $783 per month in child support. She could not remember how much she had paid toward her child support obligation but acknowledged that she owed approximately $18,888 in child support. She said that in November and December 2009, she cleaned houses for three people and that each time she worked, she received $25 or $30. She claimed that she cleaned one of the houses every week, while she cleaned the other two houses every two weeks. She said that she quit her job cleaning houses because "[i]t was bothering [her] back too much." She paid $10 in child support out of the money she earned in November and December. She used the rest of the money that she earned in November and December to pay deposits and moving expenses and to buy Christmas presents. She claimed that she never gave the Children the presents because the Grandparents prevented their visitation during Christmas. She testified that she also paid approximately $50 in child support in January or February. She said that they were current with their rent and utility payments and that they were not experiencing any financial problems. She claimed that they had to get a title loan to pay their attorney but that they were able to keep up with the

payments of $125 per month. She admitted that she was able to purchase cigarettes and her prescription medications.[2]

Relative to her overall employment history, she testified that she had also worked for three months at Auto Zone in 2008, three days at McDonald's in 2008, and six days at Buc Deli in July or August 2009. She said that while she did have back problems, she was capable of working and that she was attempting to find an "office job." She claimed that she had sought employment at "fast food places," department stores, restaurants, and "everywhere around Johnson City." She said that she had followed up with some of the employers but was told that the positions had been filled. She had been seeking employment since November 2009 but had never been given an interview. She stated that she learned she was pregnant in March 2010 and that it had been even more difficult to find employment because of her pregnancy. She testified that her longest period of employment was from August 2002 until May 2003 and that she had also worked for Perkins on and off for four years, totaling approximately six months. She admitted that she had obtained her Graduate Equivalency Diploma but said that she did not have any technical training and had not completed any college course work. She was interested in a Certified Nursing Assistant Program but explained that she could not attend the training because her driver's license had been revoked for failure to pay child support.

Mother testified that she was never told that her failure to pay child support could result in the termination of her parental rights. She said that she was never given a permanency plan or documents reflecting the criteria and procedures for the termination of parental rights. She claimed that Grandmother told her not to worry about child support in 2009 when she and Father were the primary care givers for the Children. She stated that Grandmother even returned some of Father's child support payments during that time period because she and Father were paying most of the expenses for the Children.

Following the presentation of the above testimony, the court found that Mother "was making steady money cleaning houses" but only paid $10 in child support. The court rejected Mother's assertion that a portion of the money was used to purchase Christmas presents for the Children. The court stated that Mother had her Graduate Equivalency Diploma and was healthy and capable of working. The court further found that Mother was "aware of her child support obligation and was aware of the potential consequences of her willfully failing to pay child support" and that there was "clear and convincing evidence that [Mother had] abandoned the [C]hildren by her willful failure to pay child support." The

---

[2]She also admitted that she had been taking Lortab, Valium, and Prozac while caring for the Children. She stated that she stopped taking her prescription medications in January 2010 and that the only medication she currently takes is Zantac for problems with acid reflux.

court then determined that termination of Mother's parental rights was in the best interest of the Children. This timely appeal followed.

## II. ISSUE

We consolidate and restate Mother's issue on appeal as follows:

Whether the trial court erred in terminating Mother's parental rights based upon her willful failure to support the Children.

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interests of the child."

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct.

App. 2000), *abrogated on other grounds by In re Aubrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under Tenn. R. App. P. 13(d). *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under Tenn. Code Ann. § 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004).
>
> Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

Mother contends that the trial court failed to provide proper notice that her willful failure to pay child support could result in the termination of her parental rights based upon the ground of abandonment. Mother also argues that her failure to pay child support was not willful because she did not have the ability to pay the amount demanded by the trial court. The Grandparents respond that Mother had adequate notice that willful failure to pay child support could result in the termination of her parental rights. The Grandparents alternatively respond that the court was not required to provide notice of the consequences of failure to pay child support because a state agency was not involved. The Grandparents assert that Mother's failure to pay child support was willful and that the trial court did not err in terminating Mother's parental rights on that ground of abandonment.

Relative to Mother's lack of notice regarding the requirements of abandonment as a ground for termination of parental rights, we acknowledge that Tennessee Code Annotated section 37-2-403 established requirements of notice regarding the consequences of abandonment. We believe this statute is applicable to children placed in foster care where DCS maintained responsibility for the children. *See generally In re J.L.E.*, No. M2004-02133-COA-R3-PT, 2005 WL 1541862, at *7 (Tenn. Ct. App. June 30, 2005). Indeed, the requirement provides that information regarding the consequences of failing to remit child support must be placed in the permanency plan provided by DCS. Tenn. Code Ann. § 37-2-403. Here, the Grandparents were eventually granted permanent guardianship of the Children, and DCS was relieved from the case. In any event, Mother was given notice in the order granting permanent guardianship of the Children to the Grandparents that "willful failure to pay [child support] can result in the eventual termination of [her] parental rights." Accordingly, her claim is without merit.

Relative to Mother's alleged willfulness in failing to provide support, the Tennessee Code provides, in pertinent part,

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

-8-

Tenn. Code Ann. § 36-1-102(1)(A). A parent's willful failure to support the child or make reasonable payments toward support of the child "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Additionally, "[a]bandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of the child." Tenn. Code Ann. § 36-1-102(1)(F).

This court has consistently held that the term willfulness as it applies to a party's failure to support a child must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). Indeed, "defining abandonment as the mere non-payment of support [is] unconstitutional because this language creates an irrebuttable presumption of abandonment, irrespective of intent." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (citing *In re Swanson*, 2 S.W.3d at 188). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audry S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64. Additionally, "'[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)).

In the context of the present case, the four-month period was from October 2, 2009, to February 2, 2010. For two of the four months, Mother had sporadic employment cleaning houses. She received minimal income from that employment and contributed approximately $10 out of her earnings. Mother also contributed $50 in January or February. Mother testified that most of her earnings were used to pay for moving expenses and that she was actively seeking employment during the relevant time period. We acknowledge that Mother is capable of working and should support her children. However, we do not believe that the evidence presented rose to the level of clear and convincing evidence that Mother willfully failed to support the Children during the relevant time period. The testimony presented reflects that Mother attempted to provide support but was simply unable to find suitable employment in order to sufficiently contribute to her child support obligation, in addition to her necessary expenses related to housing and utilities. Accordingly, we conclude that her failure to pay child support was not willful and that the trial court erroneously applied the ground of abandonment in support of its decision to terminate Mother's parental rights. Thus, we do not reach the issue of whether termination of Mother's parental rights was in the

Children's best interest. *See In re Valentine*, 79 S.W.3d at 550. Having concluded that the only ground presented in support of Mother's termination of her parental rights was erroneously applied, we reverse the order of the trial court.

Our decision in this parental rights termination case does not affect the custody arrangement that was in place at the time of the hearing on the petition to terminate parental rights. *Id.* While we are reversing the trial court because of the Grandparents' failure to prove by clear and convincing evidence that Mother abandoned the Children, we must acknowledge that we are not considering the question of what custody arrangement is in the best interest of the Children. Admittedly, the Parents have not fully remedied the problems that led to the Children's status as dependent and neglected. The Parents have only recently attempted to conquer their troubling addiction to prescription drugs that took the place of their prior addictions, and Mother has been unable to secure stable employment. With the addition of a third child, it will be even more difficult for the Parents to adequately care for the Children. The decision of custody is left to the trial court. *See In re Valentine*, 79 S.W.3d at 550. Additionally, our ruling today does not preclude the filing of a subsequent petition to terminate the parental rights of the Parents. *Id.*

## V.  CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellees, Karen C. and Raymond C.

_____
JOHN W. McCLARTY, JUDGE